UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GEORGE LEWIS PHIPPS, JR.,

                Petitioner,

v.                           Case No. 3:05-cv-1064-J-12HTS

CHARLIE CRIST, et al.,

                Respondents.

_____

**<u>ORDER</u>**

**I. Status**

Petitioner Phipps initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) pursuant to 28 U.S.C. § 2254 on October 14, 2005. Petitioner challenges a 2001 state court (St. Johns County, Florida) conviction for first degree murder on the following grounds: (1) Petitioner's Fourth Amendment right was violated by an unlawful search and seizure; (2) the State failed to prove that Petitioner knowingly, intelligently and voluntarily waived his <u>Miranda</u>[1] rights or that the <u>Miranda</u> warning was adequate; (3) the trial court compelled Petitioner into self-representation in violation of his federal constitutional rights by

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

conducting inadequate <u>Nelson</u>[2] and <u>Faretta</u>[3] hearings; and, (4) the State failed to prove that Petitioner's testimony was inconsistent with his theory of the events or that his confession was trustworthy.

Respondents filed a Response to Petition (Doc. #12) (hereinafter Response). In support of their Response, they submitted exhibits.[4] Petitioner was instructed on how to properly respond to a motion to dismiss and/or for summary judgment. <u>See</u> Court's Order to Show Cause and Notice to Petitioner (Doc. #5). Petitioner has responded. <u>See</u> Petitioner's Reply (Doc. #15). This case is now ripe for review.

## II. Procedural History

On October 22, 1999, Petitioner was charged by Indictment in St. Johns County, Florida, with one count of first degree murder. Ex. A at 1. According to Petitioner's confession, after he strangled the victim, he then stabbed her with a butcher knife in order "to ease her pain." <u>Id</u>. at 43-44. Petitioner also made statements to others that he had killed the victim. Ex. B, Transcript of the Trial Proceedings (hereinafter Tr.) at 203-05, 214-15, 235, 237.

---

[2] <u>Nelson v. State</u>, 274 So.2d 256 (Fla. 4th DCA 1973).

[3] <u>Faretta v. California</u>, 422 U.S. 806 (1975).

[4] Respondents' exhibits will be hereinafter referred to as "Ex."

Petitioner filed motions to suppress all confessions and admissions. Ex. A at 99-104, 398-400. On October 16, 2000, a hearing was held. Id. at 720-860. The court denied the motions to suppress. Id. at 392-94, 401-02.

On January 11, 2001, Petitioner filed a *pro se* motion, claiming his attorney (Douglas R. Withee, Assistant Public Defender) was ineffective. Id. at 408-18. Mr. Withee filed a motion to withdraw, and new counsel (Charles A. Esposito) was appointed to represent Petitioner. Id. at 433. The State filed a Motion for Suggestion of Disqualification of Defense Attorney. Id. at 438. On June 21, 2001, Petitioner filed a motion to dismiss Mr. Esposito. Id. at 447-55. On July 11, 2001, a hearing was held on the motion to dismiss. Id. at 861-78. After informing the trial judge why his attorney was ineffective, the trial judge stated: "If you want to represent yourself --. " Id. at 871. Petitioner responded that he would represent himself. Id. The trial judge found that there was no conflict of interest and that counsel was not ineffective. Id. The trial judge relieved counsel of any further responsibility in representing Petitioner. Id. at 872. However, the trial judge explained that, since this is the second time Petitioner had sought to obtain different counsel and because counsel was not ineffective, he would not appoint another lawyer to represent Petitioner. Id. The trial judge conducted a colloquy

and then allowed Petitioner to represent himself and Mr. Esposito was permitted to withdraw.  <u>Id</u>. at 873-77.

The trial began on September 24, 2001, with the selection of the jury, and the taking of testimony began on October 1, 2001. The evidence at trial established that the victim and Petitioner lived together.   The victim wanted Petitioner to leave her residence, but he refused.  On the night of the murder, Petitioner and the victim fought, and Petitioner strangled her with a cord and then stabbed her with a knife.  The victim died as a result of the knife wound and strangulation.  Petitioner confessed several times to murdering the victim.  Petitioner was found guilty as charged and was sentenced to life imprisonment.

On appeal, Petitioner, through counsel, raised the following issues: (1) the trial court erred in denying Petitioner's motion to suppress where the State failed to prove the confession was voluntary; (2) the trial court erred in denying Petitioner's right to counsel by conducting an inadequate <u>Faretta</u> hearing and failing to offer assistance of counsel at all the crucial stages; and, (3) the trial court erred in admitting evidence of a prior collateral act where there were no striking similarities or shared unique characteristics between the prior incident and the instant offense. Ex. C at 1-29.  The State filed an Answer Brief.  <u>Id</u>. at 30-64.  On January 14, 2003, the appellate court per curiam affirmed without issuing a written opinion.  <u>Phipps v. State</u>, 837 So.2d 998 (Fla.

5th DCA 2003); Ex. C at 65.  The mandate issued on January 31, 2003.

On or about May 16, 2003, Petitioner filed a *pro se* petition for writ of habeas corpus in the Supreme Court of Florida, claiming that his appellate counsel was ineffective.  Ex. D at 2-52.  On May 17, 2004, the Supreme Court of Florida transferred the petition to the appellate court for resolution.  <u>Id</u>. at 53.  On June 10, 2004, the appellate court denied the petition with prejudice on its merits.  <u>Id</u>. at 55.

On or about May 21, 2004, Petitioner filed a *pro se* Fla. Rule Crim. P. 3.850 motion for post conviction relief, raising the following claims: (1) trial counsel was ineffective for failing to raise, argue, object and investigate the State and trial court's failure to comply with the strictures of Fla. Stat. §§ 901.02(1) and 907.041 and Fla. Rule Crim. P. 3.120; (2) trial counsel was ineffective for failing to raise, argue, object and investigate the State's error in using Petitioner's testimonial statement taken during interrogation; (3) trial counsel was ineffective for failing to raise, argue, object and investigate the unlawful entry by Officer Brush when he entered Petitioner's motel room without complying with the knock and announce rule; (4) trial counsel was ineffective for failing to raise, argue, object and investigate to the officers' unlawful entry into his motel room without the issuance of a search warrant or arrest warrant; (5) trial counsel

was ineffective for failing to raise, argue, object and investigate the issue of an illegal search and seizure of Petitioner's residence; (6) the State and the trial court violated his constitutional rights by allowing the testimony of Audrey Carroll and Bertram Ladd; (7) trial counsel and the trial court violated his constitutional rights by withholding discovery; and, (8) the State and trial court lacked jurisdiction to arrest him without probable cause. Ex. E at 4-46. The State filed a Response. Id. at 48-52. On June 29, 2004, the trial judge denied the motion. Id. at 53-54. The appellate court, on November 2, 2004, per curiam affirmed without issuing a written opinion. Phipps v. State, 888 So.2d 652 (Fla. 5th DCA 2004); Ex. E at 91. Petitioner's motion for rehearing was denied on December 10, 2004. Ex. E at 92. The mandate was issued on December 29, 2004. Id. at 93.

On or about January 26, 2005, Petitioner filed a second *pro se* Rule 3.850 motion, raising eleven grounds of ineffective assistance of counsel. Ex. F 2-116. On February 14, 2005, the trial court summarily denied the motion, finding that the claims were barred as successive and that Petitioner could not claim ineffective assistance of counsel because he represented himself. Id. at 117-19. On appeal, Petitioner filed a brief. Id. at 123-305. On May 3, 2005, the appellate court per curiam affirmed without issuing a written opinion. Phipps v. State, 906 So.2d 1081 (Fla. 5th DCA 2005); Ex. F at 308. Petitioner's motion for rehearing was denied.

Ex. F at 309-13, 314.  The mandate was issued on July 25, 2005. Id. at 319.

Petitioner filed a Petition for Review in the Supreme Court of Florida, which was dismissed on August 12, 2005.  Phipps v. State, 911 So.2d 98 (Fla. 2005); Ex. F at 321.  Petitioner's motion for rehearing was stricken on August 30, 2005.  Ex. F at 322.

The Petition for Writ of Habeas Corpus, filed in this Court on October 14, 2005, is timely filed within the one-year period of limitation.  See Response at 5; 28 U.S.C. § 2244(d).

### III. Evidentiary Hearing

This Court has carefully reviewed the record and, for the reasons set forth more fully below, concludes Petitioner is not entitled to an evidentiary hearing.  A habeas corpus petitioner is entitled to an evidentiary hearing in federal court if he alleges facts which, if proven, would entitle him to habeas corpus relief. Smith v. Singletary, 170 F.3d 1051, 1053-54 (11th Cir. 1999) (citation omitted); Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992) (citing Townsend v. Sain, 372 U.S. 293 (1963)).  Here, the pertinent facts of the case are fully developed in the record before the Court.  Smith, 170 F.3d at 1054 (stating that a district court does not need to conduct an evidentiary hearing "if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel").  No evidentiary proceedings are required in this Court.  High v. Head, 209 F.3d

1257, 1263 (11th Cir. 2000) (citing McCleskey v. Zant, 499 U.S. 467, 494 (1991)), cert. denied, 532 U.S. 909 (2001).  The Court can "adequately assess [Petitioner's] claim[s] without further factual development."  Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).  Therefore, for the reasons set forth above, an evidentiary hearing will not be conducted by this Court.

## IV. Standard of Review

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA).  Since this action was filed after the effective date of AEDPA, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA. Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).

The Eleventh Circuit has described the standard of review under AEDPA:

> Title 28 U.S.C. § 2254 governs the authority of the federal courts to consider applications for writs of habeas corpus submitted by state prisoners.  Section 2254 was amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), which was effective as of April 24, 1996.  AEDPA applies

8

to all petitions filed after its effective date. . . .

AEPDA "places a new constraint on a federal habeas court's power to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court" by establishing a deferential standard for reviewing state court judgments in these cases. <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). Subsection (d) of § 2254 provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

AEDPA also makes clear that substantial deference is to be accorded a state court's findings of fact. Section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Henderson v. Campbell, 353 F.3d 880, 889-891 (11th Cir. 2003) (footnote omitted), cert. denied, 543 U.S. 811 (2004).

Clearly, the new 28 U.S.C. § 2254(d) creates a more deferential standard for federal court review of state court adjudications:  "[u]nless a state court decision is directly contrary to Supreme Court case law, we review state court findings of fact and conclusions of law for reasonableness." Van Poyck v. Florida Dep't of Corr., 290 F.3d 1318, 1321 (11th Cir. 2002) (per curiam), cert. denied, 537 U.S. 812 (2002), 537 U.S. 1105 (2003); Mitchell v. Esparza, 540 U.S. 978 (2003) (per curiam) (holding that the Ohio Court of Appeals' decision was not "contrary to" or an "unreasonable application" of clearly established federal law and stressing "the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)").

The "contrary to" and "unreasonable application" clauses have independent meaning and provide separate bases for federal habeas review:

> "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S.Ct. at 1523 (O'Connor, J., concurring).  The "contrary to" clause "suggests that the state court's decision must be substantially different" from the controlling legal precedent. Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), cert. denied, --- U.S.

---, 122 S.Ct. 2310, 152 L.Ed.2d 1065 (2002)
(quoting <u>Williams</u>, 529 U.S. at 405, 120 S.Ct.
at 1519).   A state court's decision that
applies the correct legal rule would not fit
within the "contrary to" clause even if the
federal court might have reached a different
result relying on the same law.  <u>See</u> <u>Williams</u>,
529 U.S. at 404-06, 120 S.Ct. at 1519-20
(O'Connor, J., concurring).

          . . . .

"Under the 'unreasonable application' clause,
a federal habeas court may grant the writ if
the state court identifies the correct
governing legal principle from this Court's
decisions but unreasonably applies that
principle to the facts of the prisoner's
case."  <u>Williams</u>, 529 U.S. at 414, 120 S.Ct.
at 1523 (O'Connor, J., concurring).   In
deciding this issue, the federal court should
consider whether the state court's application
of the law was objectively unreasonable and
should not apply the subjective "all
reasonable jurists" standard.  <u>Id</u>. at 409-10,
120 S.Ct. at 1521-22.   The Supreme Court
recently adhered to its pronouncements in
<u>Williams</u>, stating that "we stressed in
<u>Williams</u> that an unreasonable application is
different from an incorrect one."  <u>Bell v.
Cone</u>, 535 U.S. 685, 122 S.Ct. 1843, 1850, 152
L.Ed.2d 914 (2002).  The Court further noted
that "a federal habeas court may not issue a
writ under the unreasonable application clause
'simply because that court concludes in its
independent judgment that the relevant state-
court decision applied clearly established
federal law erroneously or incorrectly.'"  <u>Id</u>.
(quoting <u>Williams</u>, 529 U.S. at 411, 120 S.Ct.
at 1522 (O'Connor, J., concurring)).

<u>Wellington v. Moore</u>, 314 F.3d 1256, 1260-61 (11th Cir. 2002).

The Eleventh Circuit has addressed the application of the

"contrary to" clause in reviewing a state court adjudication:

> In applying the "contrary to" prong of AEDPA, we have recognized that where no Supreme Court precedent is on point, "we cannot say that the state court's conclusion . . . is contrary to clearly established Federal law as determined by the U.S. Supreme Court." <u>McIntyre v. Williams</u>, 216 F.3d 1254, 1258 (11th Cir. 2000).

<u>Washington v. Crosby</u>, 324 F.3d 1263, 1265 (11th Cir.), <u>cert</u>. <u>denied</u>, 540 U.S. 965 (2003).

Under 28 U.S.C. § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Furthermore, AEDPA "also directs that a presumption of correctness be afforded factual findings of state courts, which may be rebutted only by clear and convincing evidence. <u>See id</u>. at § 2254(e)(1). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S.

906 (2003).   Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

### V. Findings of Fact and Conclusions of Law

### A. Procedural Default

Respondents contend that **ground one** (unlawful search and seizure), **a portion of ground three** (the trial judge failed to comply with the requirements of Nelson v. State); and, **ground four** (the State failed to prove that Petitioner's testimony was inconsistent with his theory of the events or that his confession was trustworthy) have not been properly exhausted and are therefore procedurally barred from federal habeas corpus review, and this Court agrees.  See Response at 6-9.

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies.  See Castille v. Peoples, 489 U.S. 346, 349, reh'q denied, 490 U.S. 1076 (1989); Rose v. Lundy, 455 U.S. 509 (1982).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  Turner v. Crosby, 339 F.3d 1247, 1281 (11th Cir. 2003) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999)).  "This exhaustion doctrine 'is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims

before those claims are presented to the federal courts.'"  <u>Turner</u>,
339 F.3d at 1281 (quoting <u>O'Sullivan</u>, 526 U.S. at 845).

Generally, a federal habeas petition should be dismissed if
the petitioner has failed to exhaust state remedies.  <u>See</u> <u>Keeney v.
Tamayo-Reyes</u>, 504 U.S. 1, 10 (1992).  A federal court need not
dismiss the petition to allow for exhaustion of state remedies,
however, if such a dismissal would be futile.

> [I]f the petitioner simply never raised a
> claim in state court, and it is obvious that
> the unexhausted claim would now be
> procedurally barred due to a state-law
> procedural default, the federal court may
> foreclose the petitioner's filing in state
> court; the exhaustion requirement and
> procedural default principles combine to
> mandate dismissal.

<u>Bailey v. Nagle</u>, 172 F.3d 1299, 1303 (11th Cir. 1999) (per curiam)
(citing <u>Snowden v. Singletary</u>, 135 F.3d 732, 737 (11th Cir.), <u>cert</u>.
<u>denied</u>, 525 U.S. 963 (1998)).

Here, Petitioner could have and <u>should</u> <u>have</u> raised these
claims on direct appeal.  It would be futile to dismiss this case
to give him the opportunity to exhaust these claims on direct
appeal.  Thus, Petitioner has procedurally defaulted these claims.

"Procedural defaults in state courts will foreclose federal
court review, absent a showing of cause and prejudice."  <u>Parker v.
Sec'y for the Dep't of Corr.</u>, 331 F.3d 764, 770 (11th Cir. 2003)
(citing <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977)), <u>cert</u>. <u>denied</u>, 540
U.S. 1222 (2004).  "[A] petitioner may gain federal review of an

otherwise procedurally defaulted claim if he can demonstrate both cause excusing the default and actual prejudice resulting from the bar." Hill v. Jones, 81 F.3d 1015, 1022-23 (11th Cir. 1996) (citations omitted), cert. denied, 519 U.S. 1119 (1997).

Here, Petitioner has stated that appellate counsel failed to raise these claims on direct appeal.[5] Procedurally defaulted claims of ineffective assistance of counsel cannot serve as cause to excuse the default of another substantive claim. See Edwards v. Carpenter, 529 U.S. 446, 452-53 (2000) (holding that a federal court reviewing a habeas claim cannot consider an ineffective assistance of counsel claim as cause for a procedural default of another claim if the ineffective assistance claim itself was procedurally barred). "If the ineffective assistance claim is defaulted, then a petitioner must demonstrate independent cause and prejudice excusing the default of the ineffectiveness claim before that claim can be asserted as cause in relation to a second, substantive claim." Hill v. Jones, 81 F.3d at 1031 (citations omitted).

---

[5] Appellate counsel ultimately must choose to pursue those claims that he opines are most likely to prevail and winnow out the arguments he believes are less persuasive. See Johnson v. Alabama, 256 F.3d 1156, 1188 (11th Cir. 2001), cert. denied, 535 U.S. 926 (2002). Further, appellate counsel must be extremely selective about the issues to be argued on appeal. Id. (citation omitted). Petitioner's claims are not issues that would have been successful on appeal to the Fifth District Court of Appeal. See Ex. D at 55.

Here, it appears that Petitioner presented ineffective assistance of appellate counsel claims to the state court with respect to ground one and four, but not the applicable portion of ground three relating to the <u>Nelson</u> hearing. However, the Fifth District Court of Appeal denied the petition with prejudice on the merits, thus concluding that he had not met the deficient performance and prejudice standard. Ex. D at 55. Even assuming that the alleged ineffectiveness of his appellate attorney could constitute cause for the default for grounds one and four, Petitioner has not shown prejudice.

"[A] federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice." <u>Fortenberry v. Haley</u>, 297 F.3d 1213, 1222 (11th Cir. 2002) (per curiam) (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 495-96 (1986)), <u>cert</u>. <u>denied</u>, 538 U.S. 947 (2003). "In order to show the type of 'miscarriage of justice' that will excuse a procedural bar, a petitioner must make a colorable showing of actual innocence." <u>Crawford v. Head</u>, 311 F.3d 1288, 1327 (11th Cir. 2002) (citations omitted), <u>cert</u>. <u>denied</u>, 540 U.S. 956 (2003). The actual innocence exception is "exceedingly narrow in scope" and requires proof of factual innocence, not mere legal insufficiency. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), <u>cert</u>. <u>denied</u>, 535 U.S. 926 (2002); <u>Sawyer v. Holder</u>, 326 F.3d 1363,

16

1367 (11th Cir.), cert. denied, 540 U.S. 900 (2003). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson, 256 F.3d at 1171 (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Id. (citation omitted) (quoting Schlup, 513 U.S. at 324) (explaining that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected.").

Here, Petitioner has not shown both cause excusing the default and actual prejudice resulting from the bar. Furthermore, he has not shown that he is entitled to the fundamental miscarriage of justice exception. For these reasons, the Court need not review the merits of Petitioner's ground one, ground four and the portion of ground three relating to the Nelson hearing. Even assuming arguendo that these claims are not procedurally barred, the claims are without merit. Tr.; Ex. A at 861-77 (Transcript of the Nelson and Faretta hearing); Ex. D at 55; Ex. E at 53, 117; see Section V.C., Ground Three.

### B. Ground Two

As ground two, Petitioner claims that the State failed to prove that Petitioner knowingly, intelligently and voluntarily waived his Miranda rights or that the Miranda warning was adequate.

As pointed out by the Respondents, Petitioner's counsel filed a motion to suppress all confessions and admissions. Ex. A at 99-104, 398-400. On October 16, 2000, a hearing was held. <u>Id</u>. at 720-860. In denying the first motion to suppress, the trial court stated:

> The Defendant was arrested at approximately 2:30 a.m., at the Scottish Inn Motel, in St. Augustine, Florida, by officers of the St. Johns County Sheriff's Office, based on a BOLO issued by the St. Augustine Beach Police Department, concerning the death of one Susan Cady. The officers had probable cause for the arrest and the Court finds that the arrest was lawful. The Defendant was initially taken into custody by Deputy John Brush of the St. Johns County Sheriff's Office, was then placed in the marked patrol vehicle of Deputy Plott, and transported to the St. Augustine Beach Police Department for further interrogation and proceedings.
>
> Deputy Brush testified that after taking the Defendant into custody, he informed the Defendant of his miranda rights, and then requested permission to search room 118 of the Scottish Inn, where the Defendant was staying at the time. Introduced into evidence was a permission to search form, which was signed by the Defendant, and witnessed by Deputies Brush and Plott. Although Deputy Brush has no specific recollection of advising the Defendant of his constitutional rights, he testified that he always, as a matter of course, advises every Defendant of his constitutional rights prior to requesting permission to search, and in fact, the "consent to search" form makes reference to the fact that he was advised of his constitutional rights concerning the search of the premises. The Court finds that Deputy Brush's testimony is refreshingly candid, and the Court finds that the Defendant was, in fact, properly advised of his constitutional

18

rights under <u>Miranda v. Arizona</u>, at the time of arrest.

The Defendant arrived at the St. Augustine Beach Police Department, at approximately 3:00 a.m., where he was given some first aid treatment for some injuries he had sustained at an earlier time, said treatment being the administration of band-aids. At some point in time after the Defendant was treated, he was taken to interview room A, where Detectives Tom Bradley and Assistant Chief of Police Raymond Blackaby "spoke to the Defendant." The Defendant was not mirandized again at that time, and a statement was taken from the Defendant as to what had occurred on the night of the incident in question. The evidence is clear that when requested to give a statement, the Defendant said "if you give me 3 cigarettes and a coke, I will talk to you."

The officers gave him cigarettes and a soft drink of some description, and took a statement from the Defendant. Thereafter at 4:30 a.m., Detective Bradley re-mirandized the Defendant. The Defendant waived his constitutional rights, and signed a waiver of rights form, and a video taped interview was taken of the Defendant. The Court has viewed the video tape. Although there was some indication on the written waiver of Miranda rights that the Defendant had consumed vodka, the tape makes clear that the Defendant was not intoxicated. The Defendant showed no indicia of intoxication, his speech was not slurred, his thoughts were not disoriented, he appeared to be alert and awake, although somewhat tired (which is understandable concerning the hour). The Defendant had been furnished with a pack of cigarettes and was given at least 2 soft drinks during the course of the interrogation. The officers further testified that it was their recollection that after the interrogation the Defendant was given breakfast. The evidence is clear that there was no coercion in this case, no threats were made to the Defendant, no offers of

19

leniency were given in return for his statement. The Court further finds that the furnishing of a pack of cigarettes and sodas to the Defendant, is not the type of inducement which is prohibited by the case law. The Court further finds that the Defendant was properly mirandized on two occasions, and voluntarily waived his right to counsel, and agreed to waive his right against self-incrimination.

The Court has considered the totality of the circumstances, the condition of the Defendant at the time of the statement, the actions of the officers, and the statement itself. Although the Court is somewhat disturbed by the fact that Detective Bradley and Officer Blackaby did not mirandize the Defendant immediately upon arriving at the Police Department and before beginning any interrogations, the evidence is clear that the Defendant had been properly mirandized by Deputy Brush, of the St. Johns County Sheriff's Office, and was then properly re-mirandized by Detective Bradley prior to the tak[ing] of the video taped statement. The Court has once again considered the totality of the circumstances and finds that the statement was freely and voluntarily made after a proper waiver of miranda rights.

Id. at 392-94.

In denying the second motion to suppress, the trial court stated:

The Court has already heard the testimony of Deputy J. Brush and Deputy Michael M. Plott, concerning the statements that were made. The Court finds from the evidence that on October 5th, 1999, officers of the St. Johns County Sheriff's Office, primarily Detective J. Brush, took the Defendant, George Lewis Phipps, into custody as a suspect in the murder of Susan Cady.

20

The Court finds from the evidence that shortly after he was arrested, Deputy Brush advised the Defendant of his miranda rights, in a proper and lawful manner. Thereafter, the Defendant, George Lewis Phipps, Jr., was transported from the location at 427 Anastasia Blvd., in St. Augustine, Florida, to the St. Augustine Beach Police Department, for further proceedings. During the drive to the St. Augustine Beach Police station, the Defendant made several statements to Deputy Plott. Deputy Plott did not initiate these statements; no coercion was offered to require the Defendant to make the statements, nor were any inducements made to the Defendant. The Court finds that the initial statement[s], "I know what this is about." "It's about Susan Cady.", were totally spontaneous statements by the Defendant, and not in response to any questioning by the officer. The officer then asked, "Who?". The Defendant then stated, "Susan Cady, the woman I killed." The Court finds that these statements were not custodial interrogation; no interrogation was made. The Defendant was in custody, but had been properly mirandized.

Id. at 401.

As noted by Respondents (Response at 10, 12-13), the trial judge's denial of the motions to suppress, after a hearing, was reasonable and proper. Further, Petitioner, through counsel, raised the issue on appeal, and the appellate court per curiam affirmed without issuing a written opinion. Phipps, 837 So.2d 998; Ex. C at 65.

Accordingly, the claim was rejected on the merits by the state trial and appellate courts. Thus, there are qualifying state court decisions. This ground should be addressed applying the deferential standard for federal court review of state court

adjudications, as required by AEDPA.  The Court must next consider
the "contrary to" and "unreasonable application" components of the
statute.  "It is the objective reasonableness, not the correctness
per se, of the state court decision that we are to decide."  Brown
v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537
U.S. 978 (2002).

Upon a thorough review of the record and the applicable law,
it is clear that Petitioner is not entitled to relief on the basis
of this claim because the state courts' adjudications of the claim
were not contrary to clearly established federal law, did not
involve an unreasonable application of clearly established federal
law, and were not based on an unreasonable determination of the
facts in light of the evidence presented in the state court
proceedings.  See Response at 10-14.

### C. Ground Three

The remaining portion of ground three that Petitioner has
properly exhausted is:  the trial court compelled Petitioner into
self-representation in violation of his federal constitutional
rights by conducting an inadequate Faretta hearing.  As noted by
the Respondents, this claim was properly exhausted since it was
raised on direct appeal.  See Ex. C at 20.

Prior to the jury trial, Petitioner filed a pro se Request for
a Nelson Hearing, claiming his attorney was ineffective.  Ex. A at
408-18.  His attorney then filed a motion to withdraw, and new

counsel (Charles A. Esposito) was appointed to represent Petitioner. _Id_. at 433. Thereafter, on June 21, 2001, Petitioner filed a *pro se* Request for a <u>Nelson</u> Hearing, requesting the dismissal of Mr. Esposito. _Id_. at 447-55.

A hearing was conducted on July 11, 2001. _Id_. at 861-78. The trial judge stated:

> Tell me, please, what the actual conflict of interest is or why you feel he is rendering incompetent counsel. **This is a Nelson inquiry.** I can allow you to represent yourself, or the only way I can appoint another attorney is if I do find that there's an actual conflict of interest, or that Mr. Esposito is rendering ineffective assistance of counsel.
>
> . . . .
>
> But go ahead and tell me why you think Mr. Esposito should be relieved.

_Id_. at 863 (emphasis added). After Petitioner informed the trial judge regarding why he believed that Mr. Esposito was ineffective, the trial judge heard from Mr. Esposito. _Id_. at 863-67, 870-71. Mr. Esposito stated that he had visited Petitioner many times in the jail, had discussed all the matters of the defense with Petitioner, had discussed all of the facets of his motion regarding his confession, had sufficiently communicated with Petitioner and that his investigator had been "very proactive" and had been to the jail to speak with Petitioner as well. _Id_. at 868-69.

After hearing from both Petitioner and Mr. Esposito, the trial judge stated: "If you want to represent yourself --. " _Id_. at

23

871.  Petitioner interrupted, stating:  "Yes, Your Honor, I will represent myself."  Id.  The trial judge concluded:

> I will relieve Mr. Esposito of the responsibility for representing you.  I do not find there is an actual conflict of interest between you and Mr. Esposito.  He does not have a conflict of interest in representing you, nor is he rendering ineffective assistance of counsel.
>
> An attorney is not required to hold your hand.  An attorney is not required to come out there every time you want them to, or call you on the phone every time you want them to, or to respond to your letters every time you want them to.  An attorney is not required to file pleadings which that attorney knows are groundless or would be futile.
>
> So I'll relieve him of the responsibility if you want me to, but I cannot appoint another lawyer.  This is the second time you've done this on two subsequent lawyers.

Id. at 871-72.  Petitioner attempted to explain; however, the trial judge continued:

> Now, if I relieve him, I'm going to have you represent yourself.  I will not appoint another lawyer to represent you and I will not grant you a continuance of the trial.

Id. at 872.  The trial judge again informed Petitioner that his grounds to dismiss his attorney were insufficient.  Id. at 873.

The following colloquy between Petitioner and the trial judge took place.

> THE COURT: How far did you go in school?
>
> THE DEFENDANT: I have some college.
>
> THE COURT: Can you read and write?

24

THE DEFENDANT: Yes, I can.

THE COURT: What occupations have you followed during your life?

THE DEFENDANT: Vice president of a trucking company.

THE COURT: Have you ever represented yourself in court before?

THE DEFENDANT: No, I have not.

THE COURT: Are you familiar with the rules of evidence and trial procedure?

THE DEFENDANT: Some of them, yes, Your Honor.

THE COURT: Do you understand that self-representation is never wise and usually foolish?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: Do you also understand that if I allow you to represent yourself, I will not -- you will not have any extra access to the law library or legal materials than any other prisoner would have?

THE DEFENDANT: Yes, sir.

THE COURT: You understand that at trial a lawyer has the experience and knowledge of the entire trial process?

THE DEFENDANT: Yes, I do.

THE COURT: He can argue for your side during the whole trial and present the best legal arguments for your defense?

THE DEFENDANT: Yes, I do.

THE COURT: Do you also understand that since jury qualification and selection are governed by numerous legal procedures, a

lawyer's knowledge and experience may enhance the selection process on your behalf?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that a lawyer can call witnesses for you and question witnesses against you and present evidence on your behalf?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that a lawyer can advise you on whether you should testify, the consequences of that decision, and what you have a right not to say?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that a lawyer may ensure that any errors committed during the trial are properly preserved for appellate review later by a higher court?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that you will not get any special treatment from the court just because you are representing yourself?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that you will not be entitled to a continuance simply because you wish to represent yourself?

THE DEFENDANT: No, I do not understand that, because I need to prepare. I need to do some depositions in my case. And I have just taken over as counsel for my case, and therefore, according to the law, I must have reasonable time before I go to trial to prepare my case.

Id. at 873-75.

The trial judge informed Petitioner that he had since October of 1999[6] to prepare his case for trial.  <u>Id</u>. at 876.  When Petitioner expressed that his lawyers had not "done my job for me," the trial judge replied: "Your attorneys have done an excellent job for you, Mr. Phipps."  <u>Id</u>.  The colloquy then continued:

> THE COURT: Do you understand that your access to the state attorney who's prosecuting you would be severely reduced as compared to an attorney who could easily contact the state attorney?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT: And finally, if you're convicted, you cannot complain on appeal that your lack of legal knowledge or skill constitutes a basis for a new trial –
>
> THE DEFENDANT: Yes.
>
> THE COURT: -- in other words, you cannot claim that you received ineffective assistance of counsel?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand the dangers and disadvantages of representing yourself?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: You still want to represent yourself?
>
> THE DEFENDANT: Yes, sir.

---

[6] On October 22, 1999, Petitioner was charged by Indictment in St. Johns County, Florida, with one count of first degree murder. Ex. A at 1.  Therefore, Petitioner, with the assistance of counsel, had since October of 1999 to prepare his defense.

_Id_. at 876-77.  The trial judge granted Mr. Esposito's request to withdraw and allowed Petitioner Phipps to represent himself.  _Id_. at 877.

The trial began on September 24, 2001, with the selection of the jury.  Tr. at 1-135.  Immediately prior to the start of the jury selection, the trial judge reiterated to Petitioner that he had to be aware of the rules of courtroom procedure and the rules of criminal procedure, that he would not be permitted any additional library privileges and that he could not allege his own ineffectiveness on appeal.  _Id_. at 3-6.  The trial judge then asked Petitioner if he understood the dangers and disadvantages of representing himself and if he had any questions.  _Id_. at 6. Petitioner affirmed that he understood the dangers and disadvantages of self-representation.  _Id_.  Petitioner then proceeded to discuss with the trial judge his failure to receive all of his discovery, how many peremptory challenges he had and the witnesses he intended to call.  _Id_. at 6-16.  The trial judge informed Petitioner that if he were found guilty, he would be sentenced to life imprisonment.  _Id_. at 14.

As ground three, Petitioner claims that the trial court compelled him into self-representation by conducting an inadequate _Faretta_ hearing.  "Before a court allows a criminal defendant to proceed _pro se_, the defendant must clearly and unequivocally assert his right to self-representation."  _Nelson v. Alabama_, 292 F.3d

28

1291, 1295 (11th Cir. 2002) (citing <u>Faretta v. California</u>, 422 U.S.

806, 835 (1975)), <u>cert</u>. <u>denied</u>, 538 U.S. 926 (2003).  The United

States Supreme Court has stated:

> When an accused manages his own defense,
> he relinquishes, as a purely factual matter,
> many of the traditional benefits associated
> with the right to counsel.  For this reason,
> in order to represent himself, the accused
> must 'knowingly and intelligently' forgo those
> relinquished benefits.  <u>Johnson v. Zerbst</u>, 304
> U.S., at 464-465, 58 S.Ct., at 1023.  <u>Cf</u>. <u>Von
> Moltke v. Gillies</u>, 332 U.S. 708, 723-724, 68
> S.Ct. 316, 323, 92 L.Ed. 309 (plurality
> opinion of Black, J.).  Although a defendant
> need not himself have the skill and experience
> of a lawyer in order competently and
> intelligently to choose self-representation,
> he should be made aware of the dangers and
> disadvantages of self-representation, so that
> the record will establish that 'he knows what
> he is doing and his choice is made with eyes
> open.'  <u>Adams v. United States ex rel. McCann</u>,
> 317 U.S., at 279, 63 S.Ct., at 242.

<u>Faretta</u>, 422 U.S. at 835.

Here, Petitioner Phipps specifically declared that he wanted

to represent himself.  Ex. A at 871.  The trial judge conducted a

lengthy colloquy in order to determine if Petitioner was knowingly

and intelligently waiving his right to counsel and "the traditional

benefits associated with the right to counsel."  The trial judge

explained the dangers, disadvantages and consequences of self-

representation.  The record affirmatively shows that Petitioner was

literate, competent, and understanding and that he knowingly and

voluntarily exercised his informed free will in waiving his right

to counsel.  Petitioner Phipps understood the risks of self-

representation.  Petitioner's claim that the trial judge failed to conduct an adequate <u>Faretta</u> hearing is without merit.  The <u>Faretta</u> standard is satisfied.  <u>See</u> <u>Nelson v. Alabama</u>, 292 F.3d at 1295.

Further, the trial judge again discussed self-representation immediately prior to the jury selection.  Petitioner gave no indication that he no longer wanted to represent himself.  To the contrary, he discussed discovery, peremptory challenges and his witnesses.

As noted by the Respondents, this claim was raised on direct appeal, and the appellate court per curiam affirmed without issuing a written opinion.  Therefore, this ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.  Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  <u>See</u> Response at 10-11, 14-19.

## VI. Conclusion

Any other claims not specifically addressed are found to be without merit.  Accordingly, for all of the above-stated reasons, the Petition will be denied and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this __9th__ day of November, 2006.

HOWELL W. MELTON
United States District Judge

sc 10/31
c:
George Lewis Phipps, Jr.
Ass't Attorney General (Parrish)